United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE CARPENTERS HEALTH AND WELFARE TRUST FUND FOR CALIFORNIA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ACOUSTICTEC,<br><br>Defendant.<br>_____/ | No. C-08-1137 EMC<br><br>**REPORT AND RECOMMENDATION RE PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**<br><br>**(Docket No. 29)** |

Plaintiffs are (1) the Board of Trustees for various trust funds which constitute multi-employer employee benefit plans[1] under the Labor Management Relations Act and ERISA and (2) a union by the name of Carpenters 46 Northern California Counties ("Union"). On February 26, 2008, Plaintiffs initiated this lawsuit against Defendant Acoustictec, asking, *inter alia*, for confirmation of an arbitration award that was issued on or about April 11, 2007. *See* Plommer Decl., Ex. E (arbitration decision and award). After Acoustictec failed to respond to the petition, the Clerk of the Court entered Acoustictec's default. *See* Docket No. 28 (notice of default, filed on 1/23/2009). Plaintiffs then filed the currently pending motion for default judgment.

Having considered the papers submitted and accompanying submissions, as well as all other evidence of record, the Court hereby recommends that Plaintiffs' motion be **GRANTED**.

---

[1] The trust funds are as follows: the Carpenters Health and Welfare Trust Fund for California; the Carpenters Vacation-Holiday Trust Fund for Northern California; the Carpenters Pension Trust Fund for Northern California; the Carpenters Annuity Trust Fund for Northern California; and the Carpenters Training Trust Fund for Northern California.

## I.  FACTUAL & PROCEDURAL BACKGROUND

The evidence submitted by Plaintiffs in conjunction with their motion for default judgment establishes as follows.

On or about February 10, 2005, Acoustictec entered into a Memorandum Agreement with the Union. *See* Plommer Decl., Ex. B (Memorandum Agreement). Under the Memorandum Agreement, Acoustictec agreed "to comply with all wages, hours, and working conditions set forth in the Carpenters Master Agreement for Northern California effective July 1, 2003 through June 30, 2008 (which Agreement is incorporated herein by reference . . . )" as well as "any future modifications, changes, amendments, supplements, extensions or renewals of or to said Master Agreement." Memorandum Agreement ¶ 1. Acoustictec also agreed "to pay all sums of money for each hour paid for or worked by employees performing work covered by said Master Agreement to each and every, all and singular, of the Trust Funds specified in said Master Agreement and to accept, assume, and be bound by, all of the obligations of any Trust Agreement, Plan or Rules, or any amendments, modifications or changes thereof." Memorandum Agreement ¶ 4.

Consistent with the Memorandum Agreement, the Master Agreement provides that an employer is obligated to make contributions to each of the trust funds at issue in the instant case. *See* Plommer Decl., Ex. A (Master Agreement §§ 40-44).[2] The Master Agreement also states that an employer agrees to be bound by the Trust Agreements for those trust funds. *See* Master Agreement §§ 40-44.

Consistent with the Memorandum and Master Agreements, each of the Trust Agreements for the trust funds at issue contains provisions that (1) require an employer to make contributions in a timely fashion, *see, e.g.*, Plommer Decl., Ex. C (Health & Welfare Trust Agreement, Art. II, § 10); (2) require an employer to pay liquidated damages for any delinquent contribution, *see, e.g.*, Health & Welfare Trust Agreement, Art. II, § 10; (3) require a defaulting employer to pay the Board's

---

[2] The Memorandum Agreement signed by Acoustictec referred to a Master Agreement effective July 1, 2003, through June 30, 2008. *See* Memorandum Agreement ¶ 1. The Master Agreement provided by Plaintiffs indicates that it became effective on June 3, 2003. *See* Master Agreement (title page). This discrepancy does not appear material. The Master Agreement provided by Plaintiffs indicates that its term lasts from June 3, 2003, through June 30, 2008. *See* Master Agreement § 2.

reasonable attorney's fees and costs if the Board consults legal counsel, or files a suit or claim, *see, e.g.*, Health & Welfare Trust Agreement, Art. IV, § 3; and (4) require an employer to submit to an audit by the Board so that the Board may determine whether the employer is making full and prompt payment of all contributions owed to the trust funds. *See, e.g.*, Health & Welfare Trust Agreement, Art. IV, § 7.

Some time after Acoustictec signed the Memorandum Agreement, the Union initiated an arbitration proceeding, claiming, *inter alia*, that Acoustictec had failed to comply with the Agreements described above by failing to pay contributions to the trust funds at issue. On or about April 11, 2007, the arbitrator issued his decision. *See* Plommer Decl., Ex. E (arbitration decision and award). In his decision, the arbitrator stated that, pursuant to the Master Agreement, Acoustictec had agreed to arbitrate the dispute and that Acoustictec had been given notice of the arbitration but did not appear. *See* Arbitration Decision & Award at 1-2. After considering the evidence presented by the Union, the arbitrator concluded that contributions and liquidated damages were owed in the amount of $230,966.55, as well as costs in the amount of $300. *See* Arbitration Decision & Award at 5. The arbitrator also ordered Acoustictec to "submit to an audit of all of its books and records . . . from February 10, 2005 through date of audit entry in order to determine the amount of wages and fringe benefits due, if any, and to whom they may be due." Arbitration Decision & Award at 3. The arbitrator retained jurisdiction "to resolve or adjust [any] differences [between the parties]" with respect to "the amount of wages and/or fringe benefits due, or to whom said amounts are to be paid, or the amount that is to be paid following the audit." Arbitration Decision & Award at 4.

Plaintiffs initiated the instant lawsuit after attempts to get Acoustictec to comply with the arbitrator's decision were unsuccessful. *See* Pet., Exs. D-E (letters to Acoustictec).

## II. DISCUSSION

A. <u>Adequacy of Service of Process</u>

As a preliminary matter, the Court must first "assess the adequacy of the service of process on the party against whom default is requested." *Board of Trustees of the N. Cal. Sheet Metal*

3

*Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001).

Plaintiffs have submitted evidence indicating that Acoustictec is a corporation. *See* Plommer Decl., Ex. D (California Contractors State License Board website information). Service of process on a corporation is governed by Federal Rule of Civil Procedure 4(h). The rule provides that a corporation may be served, *inter alia*, pursuant to the law of the state where the district court is located or where service is made. *See* Fed. R. Civ. P. 4(h)(1)(A) (referring to service under Rule 4(e)(1), which provides for service pursuant to state law). In this case, the state where this Court is located and where service was made is the same -- *i.e.*, California.

Under California law, service of process on corporations is governed by the California Code of Civil Procedure. Under § 416.10 of the Code, a corporation may be served by delivering a copy of the summons and complaint to, *e.g.*, "the president, chief executive officer, or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager, or a person authorized by the corporation to receive service of process." Cal. Code Civ. Proc. § 416.10(b).

Under § 415.20(a) of the Code, a corporation may also be served by substituted service instead of by personal delivery. Section 415.20(a) provides:

> In lieu of personal delivery of a copy of the summons and complaint to the person to be served as specified in Section 416.10 . . . , a summons may be served by leaving a copy of the summons and complaint during usual office hours in his or her office or, if no physical address is known, at his or her usual mailing address, other than a United States Postal Service post office box, with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.

Cal. Code Civ. Proc. § 415.20(a).

Initially, the Court had concern as to whether service in the instant case was properly effected on Acoustictec. *See* Docket No. 36 (order, filed on 5/12/2009). Plaintiffs, however, addressed this concern in their supplemental briefing. A supplemental proof of service for the summons and complaint indicates that a process server tried to serve Edward Jones, Jr. The

declaration of the process server states that Mr. Jones is Acoustictec's agent for service, *see* Docket No. 26 (declaration of diligence), and there is no evidence to the contrary. Furthermore, it is a reasonable inference that Mr. Jones is one of the persons specified in § 416.10 because he was the person who signed the Memorandum Agreement on behalf of Acoustictec. Because Mr. Jones was not there, the process server left the documents with the person in charge and thereafter mailed copies of the documents. *See* Docket No. 26 (declaration of diligence). While the declaration of the process server does not expressly state that copies were mailed to Mr. Jones, it is a fair inference that that was the case given that the process server had tried to serve Mr. Jones personally on behalf of Acoustictec. Accordingly, the Court concludes that service of process on Acoustictec was proper.

B.   *Eitel* Analysis

As noted above, the Clerk of the Court has already entered Acoustictec's default in the instant case. *See* Docket No. 28 (notice of default, filed on 1/23/2009). After entry of a default, a court may grant a default judgment on the merits of the case. *See* Fed. R. Civ. P. 55. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors that a court may consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Because default has already been entered in this case, the general rule is that "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). *But see* Fed. R. Civ. P. 55(b)(2) (providing that a court may conduct hearings when, to enter or effectuate a judgment by default, it needs to establish the truth of any allegation by evidence).

Many of the above factors weigh in favor of default judgment. For example, if the motion for default judgment were to be denied, then Plaintiffs would likely be without a remedy. *See*

*Walters v. Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) ("To deny plaintiff's motion [for default judgment] would leave them without a remedy. Prejudice is also likely in light of the merits of their claims."); *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Notably, Plaintiffs made several attempts to get Acoustictec to comply with the arbitrator's decision but to no avail. *See* Pet., Exs. E (letters to Acoustictec). In addition, because Acoustictec has not filed a response to the petition, there is little to suggest that there is a possibility of a dispute concerning material facts, and it is unlikely that Acoustictec's default was due to excusable neglect, especially when Plaintiffs served not only the summons and petition but also the request for entry of default and motion for default judgment on the company but still received no response. *See* Docket Nos. 20, 30 (proofs of service).

The only *Eitel* factors that require more extensive analysis are the second and third factors, which "require that a plaintiff state a claim on which the [plaintiff] may recover." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003). In considering this issue, the Court must first examine whether or not Acoustictec agreed to arbitrate in the first place because, if it did not, then the Court could not confirm the arbitrator's decision and award.

In a prior order, the Court expressed concern about whether there was an agreement to arbitrate, noting as follows:

> An arbitration provision is contained in the Carpenters Master Agreement. *See* Compl., Ex. A (Master Agreement § 51). However, Acoustictec did not sign the Carpenters Master Agreement. Rather, it signed the Memorandum Agreement. *See* Compl., Ex. B (Memorandum Agreement). Plaintiffs' position seems to be that Acoustictec "became subject to all the terms and conditions of the [Carpenters] Master Agreement by virtue of signing [the Memorandum Agreement] . . . which incorporated by reference the [Carpenters] Master Agreement." Compl. ¶ V. However, it is not clear that the Memorandum Agreement incorporated all of the terms and conditions of the Carpenters Master Agreement. The Memorandum Agreement states only that "the individual employer or association agrees to comply with all *wages, hours, and working conditions* set forth in the [Carpenters Master Agreement]." Compl., Ex. B (Memorandum Agreement) (emphasis added). This is not necessarily the same thing as an agreement to comply with all the terms and conditions of the Carpenters Master Agreement. An

6

> [a]greement to arbitrate is not necessarily a "working condition." Notably, the provision quoted above contrasts with another provision in the Memorandum Agreement which states that, under certain circumstances, the individual employer or association agrees to "comply with all wages, hours, *terms and conditions* of the . . . Millmen's Master Agreement." Compl., Ex. B (Memorandum Agreement) (emphasis added). The Millmen's Master Agreement reference is not limited to "working conditions," but that Agreement does not appear to be at issue in this case, at least not based on the allegations in the complaint.

Docket No. 36 (Order at 4) (emphasis in original).

In supplemental briefing, Plaintiffs cited authority to support their position that arbitration is a "working condition." This authority indicates that the phrase "working condition" means a condition of employment and further indicates that arbitration or some kind of grievance procedure, as a subject for collective bargaining, is a condition of employment. *See NLRB v. Montgomery Ward & Co.*, 133 F.2d 676, 684 (9th Cir. 1943) (noting that "[c]ollective bargaining, as contemplated by the [Labor Relations] Act, is a procedure looking toward the making of a collective agreement between the employer and the accredited representative of his employees concerning wages, hours and other conditions of employment" and that the issue of arbitration is a subject for collective bargaining); *see also United Electrical, Radio & Machine Workers of Am. v. NLRB*, 409 F.2d 150, 156 (D.C. Cir. 1969) (stating that "[a] bargaining proposal is a mandatory subject of bargaining if it falls within the scope of 'wages, hours, and other conditions of employment' under Section 8(d)" and that "the case law shows that grievance arbitration, and no-strike clauses are mandatory subjects for bargaining"). The Court now concludes that the term "working condition, as used in the Memorandum Agreement, is elastic enough to encompass all the working conditions of the Master Agreement, including work-related disputes such as that involved in the case at bar.

Having reached this conclusion, the Court's review of the decision and award issued by the arbitrator is limited. "An award is legitimate so long as it 'draws its essence' from the collective

7

bargaining agreement and does not 'manifest an infidelity' to the agreement."[3] *Riverboat Casino, Inc. v. Local Joint Exec. Bd.*, 578 F.2d 250 (9th Cir. 1978).

In the instant case, there is nothing to suggest that the arbitrator's decision and award was not faithful to the Master, Memorandum, and Trust Agreements at issue. Furthermore, the award appears to have drawn its essence from the various Agreements as, under the award, the relief given to the Union – *i.e.*, unpaid contributions, liquidated damages, and an audit – was specifically provided for by the Agreements. *See Tanoma Mining Co. v. Local Union No. 1269, United Mine Workers*, 896 F.2d 745, 748 (3d Cir. 1990) ("An arbitration award draws its essence from the bargaining agreement if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties intention.") (internal quotation marks and emphasis omitted).

Because the arbitrator's award appears valid, and because the majority of the *Eitel* factors weigh in favor of a default judgment, the Court recommends that Plaintiffs' motion be granted.

C.  Relief

Having concluded that the motion for default judgment should be granted, the Court turns to the issue of what relief is proper. The Court recommends as follows.

(1)  The arbitrator's decision and award in the amount of $230,966.55 in unpaid contributions and liquidated damages, plus costs of $300, should be confirmed in its entirety.

---

[3] The Supreme Court has explained:

> Collective-bargaining agreements commonly provide grievance procedures to settle disputes between union and employer with respect to the interpretation and application of the agreement and require binding arbitration for unsettled grievances. In such cases, . . . the courts play only a limited role when asked to review the decision of an arbitrator. The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract. "The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." As long as the arbitrator's award "draws its essence from the collective bargaining agreement," and is not merely "his own brand of industrial justice," the award is legitimate.

*United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987).

1    (2)    Consistent with the decision and award, Acoustictec should be ordered to "correctly report
2           and timely pay all required contributions" to each of the trust funds at issue. Arbitration
3           Decision & Award at 3.
4    (3)    Consistent with the decision and award, Acoustictec should also be ordered to "submit to an
5           audit of all of its books and records . . . from February 10, 2005 through date of audit entry in
6           order to determine the amount of wages and fringe benefits due, if any, and to whom they
7           may be due." Arbitration Decision & Award at 3.
8    (4)    Plaintiffs should be awarded their attorneys' fees in the amount of $3,537.50[4] *see* Zinnen
9           Decl. ¶¶ 4, 8, 11, and costs in the amount of $581.25. *See* Zinnen Decl. ¶ 12. All of the
10          Trust Agreements at issue have a fee-shifting provision. *See, e.g.*, Plommer Decl., Ex. C
11          (Health & Welfare Trust Agreement, Art. IV, § 3) ("If any Individual Employer defaults in
12          the making of any Contributions or payments and if the Board consults legal counsel, or files
13          any suit or claim, there shall be added to the obligation of the Individual Employer who is in
14          default, reasonable attorney's fees, court costs and all other reasonable expenses incurred in
15          connection with the suit or claim, including any and all appellate proceedings."). The fee
16          and cost request is reasonable in light of the work necessitated by Acoustictec.
17          In addition to the above, Plaintiffs ask for a court order requiring Acoustictec to pay any
18   contributions owed if discovered during the audit. At this juncture, however, it is premature for the
19   Court to recommend the payment of any sum when the audit has not yet been conducted.
20          Plaintiffs further ask that the presiding judge retain jurisdiction, presumably to ensure that
21   the audit is performed and that all amounts found due and owing are paid. The Court does not
22   recommend this course of action because, once judgment is actually entered in the case, Plaintiffs
23   may be barred by the doctrine of res judicata from recovering delinquent payments for the relevant
24   time period that they may discover are owed through an audit. *See International Union of Operating*
25   *Eng'rs v. Karr*, 994 F.2d 1426, 1430 (9th Cir. 1993).

---

[4] This amount represents 13.75 hours of attorney time at hourly rates of $200 and $225, *see* Zinnen Decl. ¶ 4, and 4.75 hours of paralegal time at hourly rates of $95 and $125. *See* Zinnen Decl. ¶ 8.

To protect Plaintiffs' rights, the Court recommends that Plaintiffs be given an adequate time to conduct an audit and bring a further motion for entry of default judgment for a sum certain should the audit prove money is owed. *See Board of Trustees of Laborers Health & Welfare Trust Fund for N. Cal. v. Clark Arnold Corp.*, No. 06-6915 CW (Docket No. 27) (adopting this approach). Judgment would not be entered until the presiding judge grants the further motion for entry of default judgment.

### III.   RECOMMENDATION

For the foregoing reasons, the Court recommends that Plaintiffs' motion for default judgment be granted.

Any party may file objections to this report and recommendation with the district judge within ten days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Civil L.R. 72-3.

Dated: June 17, 2009

_____
EDWARD M. CHEN
United States Magistrate Judge